IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EBRAHIM RADBOD, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. RDB 10-897 |
| CORPORAL GABRIEL ARIAS, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Defendants Howard County Police Corporal Gabriel Arias ("Corporal Arias") and Howard County, Maryland ("the County") (collectively, "Defendants") move to dismiss the Amended Complaint (ECF No. 11) filed by Plaintiff Ebrahim Radbod ("Radbod"). In Counts I and II, Radbod brings claims against Defendants under Maryland tort law for false imprisonment, assault and battery. In Counts III and IV, Radbod brings claims pursuant to 42 U.S.C. § 1983 ("section 1983") alleging Defendants violated his right to be free from unreasonable search and seizures under the Fourth and Fourteenth Amendments. Defendants move to dismiss all claims against them. Defendants contend that Radbod fails to state a claim for which relief can be granted under Maryland tort law or section 1983. Defendants also contend that Corporal Arias is entitled to qualified immunity as to Radbod's asserted constitutional violations. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 12) is GRANTED as to Counts I and II with respect to Howard County, but DENIED as to the remaining counts.

1

BACKGROUND

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

On the morning of April 15, 2009, Plaintiff Radbod left his home to go to the East Columbia 50+ Center ("the Center"), where he was scheduled to meet with an AARP representative to obtain tax assistance. Am. Compl. ¶ 11. The representative had asked Radbod to arrive between 8:30 a.m. and 8:45 a.m. *Id*. Radbod was unsure of where exactly the Center was located and first went to the East Columbia branch of the Howard County Public Library, which is located in the same building as the Center. *Id*. ¶¶ 12-13. At the library, Radbod asked a staff member where he should report for tax preparation assistance. *Id*. ¶ 13. The staff member led Radbod to the Center, allegedly opening the Center's door and letting Radbod in. *Id*. Radbod sat down on a bench in the office, and his escort returned to the library. *Id*. Apparently, the Center was not officially open to the public at that point, and as a result, Radbod's entrance triggered a silent alarm. *Id*. ¶ 23.

Shortly after Radbod entered the Center, Defendant Corporal Arias responded to the silent alarm.[1] *Id*. ¶ 15. When Corporal Arias entered the Center he saw Radbod standing by the water cooler, about to take his prescribed medication. *Id*. Corporal Arias asked what Radbod was doing there, and ordered him not to move. *Id*. ¶ 15. Radbod alleges that he attempted to explain himself, but that Corporal Arias did not listen and repeatedly yelled that Radbod was an

---

[1] The Amended Complaint does not specifically state that Radbod set off a silent alarm. *See* Am. Compl. ¶ 23. Defendants state in their Motion to Dismiss that this is the reason why Corporal Arias came to the Center. Motion to Dismiss at 2. Notably, Radbod does not challenge this explanation, and states that he "does not contest the fact that, initially, Cpl. Arias had legal justification to stop Plaintiff and inquire as to what he was doing in the building." Opp'n at 4, 6. Thus, this Court will assume for purposes of this motion that Corporal Arias went to the Center in response to a silent alarm.

intruder. *Id*. ¶ 16. Radbod alleges Corporal Arias ordered him to sit back down on the bench and requested identification. *Id*. ¶ 16. Radbod asked if he could first take his medication, but Corporal Arias told him he could not, and reiterated his order that Radbod move to the bench. *Id*. Radbod then moved back to the bench. *Id*. ¶ 17. After doing so, Radbod attempted for a second time to explain how he got into the Center, and reached into his pocket to remove a cellular phone in order to call the AARP representative with whom he was scheduled to meet. *Id*. ¶ 18. Corporal Arias took the phone out of Radbod's hand, however, and instructed him to only do what he was told. *Id*.

At this point, Linda Ethridge ("Ethridge"), the Center's director, entered the office. *Id*. ¶ 19. Radbod got up and asked Ethridge to confirm that he had a meeting that morning at the Center. *Id*. Before she answered, though, Corporal Arias allegedly grabbed and twisted Radbod's arm behind his back and threw him onto the bench. *Id*. In the process, Radbod's head and shoulder struck the bench, causing him to scream out in pain and ask Corporal Arias to stop hurting him. *Id*. Radbod claims that although he put up no resistance, Corporal Arias forced Radbod's arm behind his back even harder and "ground his knee into Mr. Radbod's back," causing Radbod a significant amount of pain. *Id*. ¶ 21.

Once Radbod was sitting back on the bench, Corporal Arias frisked him, checked his identification, and radioed other agencies to check Radbod's background against terrorist wanted lists, referring to him as a "suspect." *Id*. ¶ 22. At this point, Ethridge, who had witnessed the incident, checked with the library staff and confirmed that Radbod had been let into the Center and was not an intruder. *Id*. ¶ 23. Corporal Arias did not let Radbod go, however, but instead waited to receive the results of Radbod's information check before releasing him. *Id*. ¶¶ 24-26.

3

Radbod filed his initial Complaint on April 12, 2010. ECF No. 1. On June 8, 2010, Defendants filed their first Motion to Dismiss. ECF No. 7.[2] On July 20, 2010, Radbod filed an Amended Complaint which removed his claims of negligence, intentional infliction of emotional distress, invasion of privacy, reasserted his claims for false imprisonment (Count I), assault and battery (Count II), civil rights violations pursuant to section 1983 (Count III), added a claim for violation of the Maryland Declaration of Rights (Count IV) and purported to add a claim for "*respondeat superior*/vicarious liability" (also referred to as Count IV). ECF No. 11. On August 6, 2010, Defendants filed a second Motion to Dismiss these claims. ECF No. 12.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted; therefore, a Rule 12(b)(6) motion tests the legal sufficiency of a complaint. *Edwards*, 178 F.3d at 243.

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Thus, a court considering a motion to dismiss "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Well-pleaded factual allegations contained in the complaint are assumed to be true "even if [they are] doubtful in fact," but legal conclusions are not entitled to judicial deference.

---

[2] As Radbod amended his Complaint after this motion was filed, the first Motion to Dismiss (ECF No. 7) is moot.

*See Twombly*, 550 U.S. at 570 (stating that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation'" (citations omitted)). Thus, even though Rule 8(a)(2) "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1950.

To survive a Rule 12(b)(6) motion, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has explained recently that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 129 S. Ct. at 1949. The plausibility standard requires that the pleader show more than a sheer possibility of success, although it does not impose a "probability requirement." *Twombly*, 550 U.S. at 556. Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1937. Thus, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Id.*

## ANALYSIS

**I.      Tort Claims (Counts I & II)**

In Counts I and II, Radbod claims that Corporal Arias violated Maryland law by detaining and physically restraining him. Radbod claims that Howard County is vicariously liable for these alleged tortious acts under the doctrine of *respondeat superior*.[3] Thus, this Court

---

[3] In his Amended Complaint, Radbod appears to add a claim for "*respondeat superior*/vicarious liability." Am. Compl. at 13. The concept of vicarious liability is not an independent cause of action. *See, e.g.*, *Williams v. Prince George's County*, 112 Md. App. 526, 548 (Md. Ct. Spec.

5

will first address the tort claims against Corporal Arias, and second address the tort claims against Howard County.

### A. Claims Against Corporal Arias

In Count I, Radbod claims that Defendant Corporal Arias falsely imprisoned him by depriving him of his liberty against his will. In Count II, Radbod claims that Corporal Arias assaulted and battered him in the course of the detention by maliciously and physically restraining him.

#### 1. False Imprisonment (Count I)

In order to establish a claim for false imprisonment under Maryland law, a plaintiff must establish: "1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification." *Heron v. Strader*, 361 Md. 258, 264 (2000); *see also De Ventura v. Keith*, 169 F. Supp. 2d 390, 398 (D. Md. 2001). Defendants do not appear to dispute that Radbod was deprived of his liberty without his consent. Instead, Defendants argue that Corporal Arias was justified in detaining Plaintiff because he had "reasonable suspicion that a crime was being committed by Radbod," and that Corporal Arias was justified in using minimal force to detain Radbod because of Plaintiff's "repeated failure to comply with proper instructions." Mot. to Dismiss at 4 (ECF No. 12). Thus, this Court must determine whether Radbod has sufficiently alleged that Corporal Arias was not legally justified in detaining Radbod and in using the amount force the officer is claimed to have imposed.

Radbod alleges that Corporal Arias detained and physically restrained him against his will "without legal justification." There is no dispute that Radbod had an appointment at the Center on April 15, 2009, and that he entered the Center through an open door at the direction of

---

App. 1996). Thus, this Court will construe Radbod's claim to mean that he brings all of his claims against both Corporal Arias and Howard County, as Corporal Arias's employer.

6

a library staff member. In his Amended Complaint, Radbod contends that after Corporal Arias arrived, he repeatedly tried to explain that he had a legitimate reason for being at the Center, but that Corporal Arias "paid no attention" to his explanations and continued to detain him as he called for a background check. Am. Compl. ¶ 16. Radbod also alleges that, although he "was not resisting," Corporal Arias forcibly threw him onto a bench, twisted his arm behind his back, and that Corporal Arias "ground his knee into Radbod's back to hold him down." *Id*. ¶¶15-16, 19-21. Thus, Radbod has pled facts that raise a plausible showing that he was deprived of liberty without legal justification. *Twombly*, 550 U.S. at 570; *cf. Schelhaus v. Sears Holding Corp.*, 2009 U.S. Dist. LEXIS 112558, at *9 (D. Md. Dec. 3, 2009) (granting motion to dismiss on plaintiff's false imprisonment claim because plaintiff "has not alleged that a Sears employee threatened him or restrained him in any way."). Accordingly, Defendants' Motion to Dismiss Count I is denied as to Corporal Arias.

### 2. Assault and Battery (Count II)

Under Maryland law, assault is "an attempted battery or an intentional placing of a victim in reasonable apprehension of an imminent battery," while "'[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent.'" *United States v. Baldwin*, 347 Fed. Appx. 911, 2009 WL 3326408, at *3 (4th Cir. 2009). A "law enforcement officer is not liable for assault and battery or other tortious conduct performed during the course of his official duties unless he acted with actual malice toward the plaintiff, i.e. with ill will, improper motivation or evil purpose." *Goehring v. United States*, 870 F. Supp. 106, 108 (D. Md. 1994).

Radbod claims that Corporal Arias "did intentionally physically restrain [him] with the reckless and/or malicious intention of creating an imminent fear of grave bodily harm in the

7

Plaintiff and with the apparent present ability to inflict said harm." Am. Compl. ¶ 34. Radbod also claims that Corporal Arias's actions constituted an "unwanted touching" that resulted in his "severe physical injury." *Id*. ¶¶ 36-37. Thus, Radbod has alleged that Corporal Arias's actions were intentional, that they resulted in a harmful contact without Radbod's consent, and that Corporal Arias acted with malice. These allegations state a plausible cause of action for assault and battery under Maryland law. *Twombly*, 550 U.S. at 570. Accordingly, Defendants' Motion to Dismiss Count II is denied as to Corporal Arias.

### B. Claims Against Howard County

As an initial matter, this Court must determine whether Radbod can bring tort claims against Howard County. "Local governments enjoy[] immunity from tort liability . . . with respect to non-constitutional torts based on activity classified as 'governmental.'" *Rios v. Montgomery Cnty.*, 872 A.2d 1, 13 (Md. 2005) (recognizing that such immunity still exists notwithstanding the enactment of the Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 5-304); *see also Gray-Hopkins v. Prince George's Cnty.*, 309 F.3d 224, 234 (4th Cir. 2002) (holding that a city is generally immune to common law tort claims asserted against it based on torts committed by its police officers); *Williams v. Prince George's Cnty.*, 112 Md. App. 526, 553-54 (1996) (same). There is no dispute that the County was acting in a governmental capacity in employing, training, and supervising Corporal Arias. Accordingly, the County enjoys governmental immunity from both tort claims, and Defendants' Motion to Dismiss Counts I and II is granted as to Howard County.

## II. Constitutional Claims (Counts III & IV)

In Count III, Radbod appears to allege that Defendants violated his federal constitutional rights protected by the Fourth Amendment, and incorporated to the states through the Fourteenth

8

Amendment, to be free from unreasonable search and seizures, which includes excessive force.[4]

Radbod seeks relief pursuant to 42 U.S.C. § 1983. Am. Compl. ¶ 39. In Count IV, Radbod claims that Corporal Arias and Howard County violated Articles 24 and 26 of the Maryland Declaration of Rights. Article 24 of the Maryland Declaration of Rights protects substantive due process rights and Article 26 protects the right to be free from unreasonable searches and seizures. *Dent v. Montgomery County Police Dep't*, 2010 U.S. Dist. LEXIS 97761, at *30-31 (D. Md. Sept. 17, 2010). The Maryland Court of Appeals has "often commented that . . . state constitutional provisions are *in pari materia* with their federal counterparts." *Dua v. Comcast Cable of Md., Inc.*, 805 A.2d 1061, 1071 (2002). Thus, the same analysis applies to the corresponding state constitutional claims unless otherwise noted.

### A. Claims Against Corporal Arias

Radbod seeks compensatory and punitive damages against Corporal Arias under 42 U.S.C. § 1983 for the alleged constitutional violations. In order to successfully bring a section 1983 claim where officers allegedly "used excessive force . . . in the course of a 'seizure' of a free citizen," a plaintiff must demonstrate that "the force used to effect a particular seizure" was unreasonable. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). In determining reasonableness, a court should examine, among other things, "whether the suspect poses an immediate threat to the safety of . . . others, and whether [she] is actively resisting arrest or

---

[4] Radbod also alleges in his Amended Complaint that his Fifth Amendment rights were violated. Am. Compl. ¶¶ 39, 46. In his Amended Complaint, Radbod removed some references to the Fifth Amendment that were in his original Complaint, and it appears that he merely neglected to take out all of the references. Furthermore, Radbod does not offer any support for a claim under the Fifth Amendment. Even if he had, the Fifth Amendment applies only to the federal government, and Corporal Arias is a state employee. *See Freilich v. Bd. of Dirs. of Upper Chesapeake Health, Inc.,* 142 F. Supp. 2d 679, 691 (D. Md. 2001) ("As an initial matter, [plaintiff's] claim that [defendants] violate[] her right[]s . . . under the Fifth Amendment must be dismissed . . . because the Fifth Amendment restricts only actions of the federal government. . .").

9

attempting to evade arrest by flight." *Id*. Furthermore, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. at 397.

Here, the Amended Complaint alleges facts which, if proven through discovery, could support an excessive force claim against Corporal Arias. In the Amended Complaint, Radbod contends that although he put up no resistance, Corporal Arias forcibly threw him onto a bench, twisted Radbod's arm behind his back and that Corporal Arias "ground his knee into Radbod's back to hold him down." Am. Compl. ¶¶15-16, 19-21. It also states that as a result of being thrown down, Radbod's head and shoulder struck the bench. *Id*. ¶ 19. At this stage, the Court must construe the allegations in the Complaint in favor of Plaintiff. Accordingly, these allegations are sufficient to show that Corporal Arias may be liable under an excessive force theory.

Defendants assert that Corporal Arias is immune from section 1983 liability under the doctrine of qualified immunity. Government officials are generally protected by qualified immunity when they perform the discretionary duties of their offices. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts must ask two questions when deciding whether government officials should be granted qualified immunity: (1) whether the plaintiff demonstrated the violation of a constitutional right; and (2) if a constitutional right has been violated, whether the right was clearly established, "such that it would be clear to an objectively reasonable officer that his conduct violated that right." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002); *see also Pearson v. Callahan*, 555 U.S. 223, 573 (2009). Either question may be addressed first. *See Pearson*, 555 U.S. at 576.

Defendants bear the burden of establishing qualified immunity. *See Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 332 n.10 (4th Cir. 2009). Corporal Arias's qualified immunity argument appears to rest on the theory that his actions at the Center were objectively reasonable. As Radbod as sufficiently alleged an excessive force claim, this Court cannot definitively find that Corporal Arias acted in an objectively reasonable fashion without discovery. Accordingly, Defendants will not be granted qualified immunity at this time, and Defendants' Motion to Dismiss Counts III and IV will be denied as to Corporal Arias.[5]

### B. Claims Against Howard County

Defendants contend that Radbod's constitutional claims against Howard are insufficient to hold the County liable pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). While a municipality is subject to suit under section 1983, *see id*. at 690, liability attaches "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Thus, a municipality cannot be held liable in a section 1983 action under a theory of *respondeat superior*. *Monell*, 436 U.S. at 694. Under *Monell*, "[l]iability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984) (citing *Monell*, 436 U.S. at 694). A

---

[5] Radbod does not specify whether he brings the constitutional claims against Corporal Arias in his official capacity as well as in his individual capacity. To the extent Radbod intends to sue Corporal Arias in his official capacity, his claims under the U.S. Constitution must be dismissed as the Eleventh Amendment extends immunity to state officials sued in their official capacities for monetary damages under section 1983. *See Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office"). Notably, this analysis would not apply to Radbod's state constitutional claims under the Maryland Declaration of Human Rights as "Maryland does not recognize an official/individual distinction in its constitutional jurisprudence." *Miller v. Hamm*, 2011 U.S. Dist. LEXIS 141, at * 53, n.15 (D. Md. Jan. 3, 2011).

municipality is liable when a "policy or custom" is "fairly attributable to the municipality as its 'own,' and is . . . the 'moving force' behind the particular constitutional violation." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987) (internal citations omitted).

Radbod alleges that Howard County "as a matter of policy, practice, and custom" failed to adequately train its force "concerning the fundamental rights of its citizens." Am. Compl. ¶ 41. Radbod claims that this "policy, practice, or custom of deliberate indifference to discipline and training" caused Corporal Arias to engage in the purportedly unlawful conduct. *Id*. Specifically, Radbod contends that Howard County showed "deliberate indifference" to officers' inadequate responses to citizen's complaints. *Id*. ¶ 44. These allegations are sufficient to allege the County's liability under section 1983 and Articles 24 and 26. *Cf. Drewry v. Stevenson*, 2010 U.S. Dist. LEXIS 856, at *10 (D. Md. Jan. 5, 2010) (dismissing claims under section 1983 and Articles 24 and 26 against Frederick County where the complaint did not allege facts showing a "persistent and widespread policy or custom" or specify that such a policy or custom was connected to defendant police officer's conduct); *Walker v. City of Salisbury*, 170 F. Supp. 2d 541, 551 (D. Md. 2001) (dismissing claims under section 1983 against the City of Salisbury where the complaint did not allege the existence of policies or customs that violated plaintiff's constitutional rights and caused his injuries). Thus, Defendants' motion to dismiss Counts III and IV will be denied as to Howard County.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 12) is GRANTED as to Counts I and II with respect to Howard County, but DENIED as to the remaining counts.

A separate Order follows.

Dated: February 11, 2011          /s/_____
                                  Richard D. Bennett
                                  United States District Judge